UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

v.  Case No. 3:13cr26-MCR

MARK W. SHOEMAKER

    Defendant.
_____/

## REPORT AND RECOMMENDATION

The United States seeks to partially satisfy a judgment for restitution it obtained in a criminal case against defendant by garnishing funds from his Individual Retirement Account ("IRA"). Defendant requested a hearing and objected to the writ of execution on the IRA. The matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Fed. R. Civ. P. 72(a), and N.D. Fla. Loc. R. 72.3. After reviewing the parties' original submissions, the arguments set forth at the February 8, 2018, hearing, and the supplemental briefs, the undersigned concludes defendant's objection to the writ should be overruled.

## BACKGROUND

On March 22, 2013, defendant Mark W. Shoemaker pleaded guilty to conspiracy to commit bank fraud, bank fraud, and making false statements to a federally insured institution. (Docs. 21-23). In the plea agreement, defendant agreed: (1) "to make full restitution to the victims as determined by the Court"

including "the FDIC as Receiver of GulfSouth Private Bank"; and (2) to forfeit his interest in a parcel of land in Alabama. (Doc. 22, p. 4). The government agreed the proceeds from the forfeiture would apply to the restitution amount. (*Id.*). The Presentence Investigation Report ("PSR") calculated that defendant owed restitution to the FDIC totaling $468,863.09. Defendant did not object to the PSR's calculation of restitution. The PSR also identified one of defendant's assets as a 401K Retirement Account valued at $71,000.

On June 6, 2013, defendant was sentenced to one day of imprisonment with credit for time served, as well as five years of supervised release. (Docs. 38-39, 43). As part of the sentence and judgment, defendant was ordered to pay $469,163.09 in criminal monetary penalties, comprised of a $300 special monetary assessment and $468,863.09 in restitution. (Docs. 38-39, 43). Interest on the restitution amount was waived, and the Schedule of Payments section of the judgment stated:

> **The $300.00 monetary assessment shall be paid immediately.** Any payments of the monetary assessment and the fine made while the defendant is incarcerated shall be made through the Bureau of Prisons' Inmate Financial Responsibility Program. The remaining balance shall be paid as follows: In monthly installments of not less than $300.00 over a period of supervised release to commence within 30 days of the date of Judgment.

(Doc. 39, p. 7-8) (bold in original). In addition, a special condition of defendant's supervised release provided that "[a]ny unpaid restitution shall be paid in monthly

Case No. 3:13cr26-MCR

installments of not less than $300 per month to commence within 30 days of the date of Judgment." (*Id.*, p. 4).

Since the sentencing hearing, defendant has made monthly restitution payments of $300. (Doc. 65, p. 5). The restitution amount has also been reduced by the proceeds from defendant's forfeiture of the land in Alabama. As of September 20, 2017, defendant owed $433,374.34 in restitution. (Docs. 48-49).

The government represents that "[o]n or around July 2017, the Financial Litigation Unit of the United States Attorney's Office for the Northern District of Florida learned that Shoemaker had an IRA account containing $153,866.73." (Doc. 63, p. 2). Pursuant to the government's petition, the court issued a writ of execution on September 21, 2017; the government seeks to liquidate the IRA and apply the funds to defendant's outstanding restitution. (Docs. 48-49).

After receiving notice of the writ, defendant requested a hearing. (Doc. 53). Defendant, proceeding *pro se*, asserted: (1) he has "complied with all aspects of [his] sentencing, probation, and restitution repayment"; (2) his "401K recently moved to an IRA through a different provider because [he] no longer work[s] for the original company"; (3) he has "not touched [his] retirement fund"; (4) the fund "was available at the time of [his] sentencing and was not taken at that time"; and (5) he does "not understand why [he] would continue to contribute funds to something that was going to be taken from [him]." (*Id.*). He argued that if the government "is going

to take [his] 401K, [his] debt should be wiped clear because this fund was the means by which [he] could pay [the] restitution in full in 15 years" and "[b]y taking [the fund] now, the [government] is taking away every opportunity [he has] to repay the debt in full." (*Id.*).

The court held a hearing on February 8, 2018, and ordered the government and defendant to submit supplemental briefs concerning whether the judgment, and the payment schedule included therein, prevents the government from garnishing defendant's IRA. (Docs. 56-57). After the hearing, defendant retained counsel. (Doc. 58). Counsel submitted the supplemental brief on defendant's behalf. (Doc. 65).

## DISCUSSION

Under the Mandatory Victims Restitution Act ("MVRA"), restitution is mandatory for certain crimes, including offenses committed by fraud. *See* 18 U.S.C. § 3663A(a)(1), (c)(1)(A)(ii). After determining the amount of restitution, "the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid[.]" 18 U.S.C. § 3664(f)(2).

The government may enforce restitution orders through the procedures available for enforcement of a civil judgment. *See* 18 U.S.C. §§ 3612(c)(2), 3613(a) & (f), 3664(m)(1)(A). The Federal Debt Collection Procedures Act ("FDCPA")

"provides the United States several remedies to satisfy a judgment, one of which is to obtain a writ of execution." *United States v. Duran*, 701 F.3d 912, 915 (11th Cir. 2012) (*citing* 28 U.S.C. §§ 3202(a), 3203). A restitution award may be enforced against "all property or rights to property of the" defendant, except for property that falls within the exemptions set forth in Sections 6334(a)(1)-(8),(10) and (12) of the Internal Revenue Code. 18 U.S.C. § 3613(a)(1); *see also* 28 U.S.C. § 3203(a) ("All property in which the judgment debtor has a substantial nonexempt interest shall be subject to levy pursuant to a writ of execution."). "The attorney general is required by the MVRA to enforce victim restitution orders 'aggressively.'" *United States v. Ekong,* 518 F.3d 285, 286 (5th Cir. 2007) (*quoting United States v. Phillips*, 303 F.3d 548, 551 (5th Cir. 2002)).

Defendant does not claim his IRA is exempt under any of the categories listed under 26 U.S.C. § 6334(a). Instead, he argues the judgment controls the payment of restitution, and his compliance with the payment plan set forth in the judgment precludes the government from garnishing the IRA because no amount of restitution aside from his monthly payment amount is presently due.

The oral pronouncement of defendant's sentence did not specifically address whether the restitution amount was due and payable immediately. (Doc. 43, p. 27-28). The government, however, argues the written judgment made the restitution due immediately based on the following provision in the Schedule of Payments:

"Payments shall be applied in the following order: (1) special monetary assessment; (2) non-federal victim restitution; (3) federal victim restitution; (4) fine principal; (5) costs; (6) interest; and (7) penalties in full immediately." (Doc. 39, p. 8). That provision, however, merely identifies the order in which payments will be applied to various monetary obligations that can arise from a criminal case. It does not expressly evidence an intent to make restitution due immediately.

Nevertheless, several factors suggest the government may garnish the IRA. First, the judgment's use of the phrase "not less than $300.00" suggests the court contemplated the possibility that defendant might make payments of more than $300, or that amounts exceeding $300 might be collected by other means. The possibility of deviating from the minimum payment schedule is also acknowledged by the provision of the judgment stating "defendant's supervision may terminate after two and one-half (2½) years if restitution is paid in full." (Doc. 39, p. 4).

Second, nothing in the written judgment explicitly states the government cannot avail itself of the collection methods provided in the FDCPA. And "[o]ther courts have made clear that the government may seek a writ of garnishment requiring payments on a schedule that exceeds that previously ordered by the Court." *United States v. Miller*, 588 F. Supp. 2d 789 (W.D. Mich. 2008) (holding government could garnish pension plan benefits despite judgment with schedule of payments providing for "[l]ump sum payment of $200.00 due immediately" and "[p]ayment in equal

quarterly installments of $25.00 during the term of incarceration, to commence 60 days after the date of this judgment"); *Ekong*, 518 F.3d at 286 ("Ekong contends that there was no justification for requiring immediate payment because the criminal judgment specified that restitution be paid in installments. This argument is without merit.").

Third, preventing the government from garnishing the IRA would frustrate "the primary and overarching goal" of the MVRA, "which is to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being." *United States v. Simmonds*, 235 F.3d 826, 831 (3d Cir. 2000); *see also United States v. Hawkins*, 392 F. Supp. 2d 757, 759 (W.D. Va. 2005) (The underlying policy of the MVRA "would be undermined if the court-imposed payment schedule created a right in the defendant to pay no more than the ordered installments. The better view is that a payment schedule simply serves as another collection method for the benefit of the victim rather than as a benefit to the defendant. This conclusion is supported by the fact that a court-imposed payment schedule is backed by sanctions for noncompliance.").

If defendant's argument prevailed, it could produce a result contrary to this purpose. Under 18 U.S.C. § 3613(b), "[t]he liability to pay restitution shall terminate on the date that is the later of 20 years from the entry of judgment or 20 years after the release from imprisonment of the person ordered to pay restitution." If defendant

paid the minimum of $300 a month for 20 years, the payments would total only $72,000, far short of the over $400,000 in restitution he owes. *See United States v. Clayton*, 646 F. Supp. 2d 827, 833 (E.D. La. 2009) (summarizing the government's argument: "[I]f the payment schedule were the only mechanism ensuring payment, it might result in only a fraction of the restitution being repaid. This result would conflict with the purposes of the MVRA, and thus the Government argues that any court-imposed payment schedule cannot hamstring its right to execute on a defendant's property.") (citations omitted). Such a result would also be inconsistent with defendant's plea agreement, in which he "agree[d] to make full restitution." (Doc. 22, p. 4).

To support his counterargument, defendant relies on the Tenth Circuit's decision in *United States v. Martinez*, 812 F.3d 1200 (10th Cir. 2015). *Martinez*, however, is distinguishable from the present case. First, the orally-pronounced restitution order in *Martinez* fixed the monthly payments at 25% of the defendant's disposable income. *Id.* at 1203. Here, in contrast, defendant was ordered to make monthly payments of *not less than* $300. Thus, while defendant's payment plan requires a minimum monthly payment, it does not impose an upper limit on his contributions toward the outstanding restitution amount.

Second, the district judge in Martinez's case declined to check a box indicating the restitution amount would be due "in full immediately"; instead the

judge checked a box indicating $300 was due immediately and "the 'balance' of the total restitution award would become 'due' subject to the 'special instructions' (referring to the payment schedule)." *Id.* at 1203-04. The judgment entered in Mr. Shoemaker's case, by contrast, does not contain any analogous signs indicating the balance of the restitution amount was not due immediately. And nothing at either Shoemaker's sentencing hearing or within the written judgment suggests a limit to the government's ability to pursue collection beyond that required by the court-ordered payment plan.

The persuasiveness of the *Martinez* decision is also undermined by its failure to acknowledge that a victim identified in a restitution order can pursue collection on its own behalf. The *Martinez* court repeatedly emphasized the sentencing judge is responsible for evaluating a defendant's financial condition and determining when and how restitution may be collected:

> In our view, the payment schedule reflected the district court's determination of how and when Mr. Martinez should pay the restitution after evaluating his financial condition. The government circumvented that evaluation by garnishing Mr. Martinez's retirement accounts in disregard of the district court's payment schedule.

*Id.* at 1206; *see also id.* at 1202 ("By statute, it is the district court—not the government—that determines how a defendant is to pay restitution. . . . Thus, the government can enforce only what the district court has ordered the defendant to pay."); *id.* at 1206 ("In requiring the court to consider the defendant's financial

condition, the statute directs the court (not the government) to determine how and when the defendant should pay the restitution amount."); *id.* ("This interpretation would allow the government to usurp the district court's role in evaluating the defendant's financial conditions and setting the payment schedule."); *id.* ("Section 3664 states that in-kind payments can be ordered by the district court, not the government. . . . The authority to order in-kind payments remains exclusively with the district court even when the district court chooses to establish an installment payment schedule."); *id.* ("The government could not usurp the district court's role by enforcing payments not yet due under the court-ordered payment schedule.").

The *Martinez* court never acknowledged the MVRA allows victims to enforce restitution orders without regard to a court-ordered payment plan:

> At the request of a victim named in a restitution order, the clerk of the court shall issue an abstract of judgment certifying that a judgment has been entered in favor of such victim in the amount specified in the restitution order. Upon registering, recording, docketing, or indexing such abstract in accordance with the rules and requirements relating to judgments of the court of the State where the district court is located, the abstract of judgment shall be a lien on the property of the defendant located in such State in the same manner and to the same extent and under the same conditions as a judgment of a court of general jurisdiction in that State.

18 U.S.C. § 3664(m)(1)(B). Thus, the sentencing court is not necessarily the sole entity responsible for determining the means of collecting restitution. *See United States v. Walker*, 353 F.3d 130, 133 (2d Cir. 2003) ("The significance of [the court's schedule of payments] is diminished, however, by the fact that the victim may

convert the restitution order into an abstract of judgment for the full amount of the restitution order[.]"). This provision of the MVRA lessens the persuasiveness of the *Martinez* decision.

Alternatively, defendant argues the government cannot garnish the IRA without first establishing the current amount of restitution owed. Defendant notes joint and several liability was imposed on two defendants in N.D. Fla. Case No. 3:16cr96-RV for the restitution amount ordered in this case. *See* 18 U.S.C. § 3664(h) ("If the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant."). Shoemaker claims the government must account for possible payments made by those defendants before seeking to collect the restitution from the IRA. *See* (Doc. 65, p. 8-9) ("Without evidence of Co-Defendant payments being presented to the court, there cannot be a formal determination that this restitution is still due and owning, and if so, in what amount. In executing an enforcement proceeding, the court should make a determination of amounts paid and amounts owed.").

A court-supervised accounting of the outstanding restitution is not necessary.[1] The government will be expected to examine any restitution amounts paid by the defendants in N.D. Fla. Case No. 3:16cr96-RV and ensure the amount of restitution collected from Shoemaker does not exceed the amount owed.[2]

Accordingly, it is respectfully RECOMMENDED:

That defendant's objection to the writ of execution (doc. 53) be DENIED and that the government be permitted to garnish defendant's IRA. That the government shall be responsible for evaluating the restitution amounts paid by the defendants in N.D. Fla. Case No. 3:16cr96-RV and ensuring the amount of restitution collected from Mr. Shoemaker does not exceed the amount owed.

At Pensacola, Florida, this 20th day of June, 2018.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

---

[1] Defendant also states: "Should the court be inclined to grant the Government request for levy, [defendant] requests an evidentiary hearing to present evidence from original counsel for the government and Defense, in regard to possible defenses[,]" including laches and collateral estoppel. (Doc. 65, p. 10-11). Such a hearing is not necessary. The government's failure to pursue the IRA at the time of sentencing, despite its existence being acknowledged in the PSR and the MVRA's directive that the government enforce restitution orders "aggressively," should not prevent the government from now seeking to satisfy the restitution through garnishment. Furthermore, based on defendant's representation that the "IRA principal has grown in value naturally" (doc. 65, p. 3), the delay benefitted him in that the garnishment will satisfy a larger amount of the outstanding restitution.

[2] Because neither party raised the tax implications of the proposed garnishment, which might amount to an early withdrawal from Mr. Shoemaker's IRA, it is not discussed in this Report and Recommendation.

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.